1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7   ANITA BLACKWEASEL,                )
                                      )
8                    Plaintiff,       )        CASE NO. C05-2054-MJB[1]
                                      )
9           v.                        )        MEMORANDUM OPINION
                                      )
10  JO ANNE B. BARNHART,              )
    Commissioner of Social Security,  )
                                      )
11                                    )
                     Defendant.       )
12  _____)

13          Plaintiff Anita Blackweasel appeals to the District Court from a final decision of the

14  Commissioner of the Social Security Administration (the "Commissioner") denying her

15  application for Supplemental Security Income under Title XVI of the Social Security Act.  For

16  the reasons set forth below, the Court REVERSES the Commissioner's decision and

17  REMANDS for further proceedings.

18                          **I. PROCEDURAL HISTORY**

19          On October 1, 2002, Plaintiff protectively filed an application for Supplemental Security

20  Income ("SSI").  (Tr. 63-67.)  Plaintiff alleged disability since December 31, 1993 due to back

21  problems and arthritis.  (Tr. 64, 74.)  On March 5, 2003, Plaintiff filed a Reconsideration

22  Disability Report additionally alleging depression.  (Tr. 110.)  The claim was denied initially and

23

24          [1] Pursuant to the consent of the parties, this case proceeds before the undersigned in
    accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13.

25

    MEMORANDUM OPINION
26  PAGE - 1

upon reconsideration.  (Tr. 30-33, 40-42.)  A hearing was held before Administrative Law Judge ("ALJ") M. J. Adams on March 31, 2005.  (Tr. 443-58.)  Plaintiff was represented by counsel and testified at the hearing.  (*Id.*)  Vocational expert Michael Swanson also testified at the hearing.  (*Id.*)  On June 16, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 17.)  The Appeals Council denied Plaintiff's request for review[2], making the ALJ's decision the final decision.  (Tr. 5.)  Plaintiff timely filed her appeal with this Court.  (Dkt. #1.)

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the ALJ's decision and award benefits. (Dkt. #11.)  Plaintiff argues that the ALJ erred in (1) finding her pain syndrome is a not a severe impairment, (2) failing to provide specific and legitimate reasons supported by the record for rejecting the opinions of three examining doctors, (3) rejecting her subjective testimony, and (4) ignoring relevant vocational expert testimony.  (Dkt. #11.)  The Commissioner argues that the ALJ's decision should be affirmed because it was supported by substantial evidence.  (Dkt. #13.)

## III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation,

---

[2] Plaintiff provided to the Appeals Council additional evidence consisting of an abstract on the interpretation of Waddell's signs.  (Tr. 8.)

MEMORANDUM OPINION
PAGE - 2

it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

The Social Security Administration regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 416.920.  At step one, the claimant must establish that she is not engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the claimant must establish that she has one or more medically severe impairments or a combination of impairments.  If the claimant does not have a "severe" impairment, she is not disabled.  *Id.* at § (c).  At step three, the Commissioner determines whether the claimant's impairment meets or equals any of the listed impairments described in the regulations.  A claimant who meets one of the listings is disabled.  *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work.  *Id.* at § (e).  If the claimant is not able to perform her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.  *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094,

MEMORANDUM OPINION
PAGE - 3

1   1100 (9th Cir. 1999).  If the Commissioner finds the claimant is unable to perform other work,

2   then the claimant is found disabled.

3                           **V.  SUMMARY OF THE RECORD EVIDENCE**

4           Plaintiff was last insured for Disability Insurance Benefits on December 31, 1982.

5   (Tr. 68.)  Plaintiff is currently 46 years old.  (Tr. 64.)  Plaintiff has a General Equivalency

6   Diploma.  (Tr. 80.)  Plaintiff has worked as a cashier, housekeeper, cook, meat trimmer, forest

7   fighter camp crew member, laundry worker, telemarketer, day laborer, fisher person, assistant

8   librarian, and substitute teacher.  (Tr. 75, 88-94.)

9           Because the parties have adequately summarized the record in their briefing, and because

10  much of the record evidence is not relevant given the scope of the issues, this Court will not

11  summarize the record here.  Relevant evidence will be referenced as appropriate in the

12  discussion.

13                              **VI.  THE ALJ'S DECISION**

14          At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

15  activity at any time since the alleged onset of disability.  (Tr. 18, 26.)  At step two, the ALJ

16  found that Plaintiff has depression and degenerative disc disease of the lumbar spine, and that

17  they are severe impairments.  (Tr. 21, 26.)  The ALJ further found that Plaintiff's bilateral knee

18  osteoarthritis, asthma, pain disorder with medical and psychological factors, alcohol and heroin

19  abuse, and metacarpal fracture are not severe impairments, and that she has no medically

20  determinable impairment related to her complaints of hip and hand pain.  (*Id.*)  The ALJ also

21  found that Plaintiff's allegations regarding her limitations were not totally credible.  (Tr. 23, 26.)

22  At step three, the ALJ found that Plaintiff's medically determinable impairments do not meet or

23  medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr.

24  21-22, 26.)

25

26  MEMORANDUM OPINION
    PAGE - 4

At step four, the ALJ determined that Plaintiff has the residual functional capacity to do the following: (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of two hours in an eight-hour workday, and (3) sit for a total of six hours in an eight-hour workday, provided that she be allowed to alternate between sitting, standing, and/or walking at thirty minute intervals; (4) occasionally climb stairs, balance, kneel, crouch, and crawl, and frequently stoop; (5) understand, remember, and carry out simple instructions, make simple work-related decisions, respond appropriately to supervisors, co-workers, and usual work settings, and deal with changes in a routine work setting.  (Tr. 23-24, 26.)  The ALJ also determined that Plaintiff should avoid concentrated exposure to hazards and vibration.  (Tr. 23, 26.)

At step five, the ALJ found that Plaintiff is a younger individual with the equivalent of a high school education and no past relevant work.  (Tr. 25, 26.)  The ALJ determined that although Plaintiff's exertional limitations do not allow her to perform the full range of sedentary or light work, a significant number of jobs exist in the national economy that she could perform, including work in small parts assembly and hand packaging.  (Tr. 27.)

## VII.  DISCUSSION

A.   Examining Physicians' Opinions

Plaintiff argues that the ALJ erred in failing to provide specific and legitimate reasons supported by the record for rejecting the opinions of her examining physicians, Dr. James LoGerfo, Dr. Sohail K. Mirza, and Dr. Shoshanna Press.  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th cir. 1996) (citing *Baxter v. Sullivan*, 923 F.2d

MEMORANDUM OPINION
PAGE - 5

1391, 1396 (9th Cir. 1991)).  "Clear and convincing" reasons are also required to reject the

treating doctor's ultimate conclusions.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may

not reject this opinion without providing "specific and legitimate reasons" supported by

substantial evidence in the record for doing so.  *See Lester*, 81 F.3d at 830; *Magallanes v.*

*Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).

     The ALJ assigned substantial weight to the findings of Dr. Fleming, a state agency

medical consultant because, although he did not examine Plaintiff, he is an expert in evaluating

the medical issues in disability claims before the Social Security Administration.  (Tr. 24.)  The

ALJ also adopted the findings of state agency medical consultant, Dr. Reade, regarding the

functional limitations arising from Plaintiff's mental impairments.  The ALJ adopted Dr. Reade's

findings because they were consistent with Plaintiff's actual functioning as demonstrated by her

daily activities and performance on mental status examination.  (Tr. 24.)  In adopting the medical

consultants' opinions, the ALJ largely rejected the opinions of Plaintiff's examining and treating

physicians.  (Tr. 24.)

**Dr. LoGerfo**

     On January 29, 2003 and April 9, 2003,  Dr. LoGerfo opined that Plaintiff was severely

limited and unable to perform at least half-time work.  (Tr. 279, 215.)  The Physical Evaluation

form defines "severely limited" as an inability to lift at least two pounds or stand and/or walk.

(*Id.*)  The ALJ rejected Dr. LoGerfo's opinion because the limitations were not supported by the

objective evidence.  (Tr. 24.)  The ALJ also noted that Dr. LoGerfo had encouraged Plaintiff to

increase her walking and activity level, and that examining physician Dr. Paynter had encouraged

Plaintiff to be active, assuring her that she would not likely hurt herself as long as she used

proper ergonomics.  (*Id.*)

MEMORANDUM OPINION
PAGE - 6

First, the fact that Drs. LoGerfo and Paynter encouraged Plaintiff to increase her activity level does not directly contradict the opinion that she was severely limited.  Second, regarding objective evidence, Dr. LoGerfo does not, in his treatment notes, specifically observe or assess an inability to lift two pounds or stand and/or walk.  In fact, he frequently observes that Plaintiff walks with a normal gait (Tr. 182, 185, 335, 361, 402) or without difficulty (Tr. 322).  However, he also observed limping.  (Tr. 176, 334.)  In addition, he observed mild joint tenderness in Plaintiff's left third finger, rheumatic symptoms, edema in the extremities bilaterally, and palpable muscle spasm bilaterally.  (Tr. 320, 333, 335.)

Dr. LoGerfo assessed Plaintiff as having significant problems with pain (Tr. 186), for which he prescribed medication.  (Tr. 176, 186, 322, 333, 335, 340.)  He also assessed Plaintiff as having significant depressive symptomatology (Tr. 186), for which he prescribed antidepressants.  (Tr. 182, 361.)  Even before Plaintiff's psychiatric evaluation, Dr. LoGerfo had recognized a possible psychological component in Plaintiff's pain issues when he noted that pain medications would be adjusted, depending, in part, on whether the pain improved with increased levels of antidepressants.  (Tr. 182.)

In conclusion, while the objective physical evidence is sparse, Dr. LoGerfo's opinion appears to be based not only on that evidence, but also on his assessment that Plaintiff's pain problems are significant and that she suffers from pain syndrome.  (Tr. 332, 397)  He also gives credence to the possible psychological factors involved in the pain and its significant depressive symptomatology.  For these reasons and in light of Dr. Press' diagnosis of pain disorder with both medical and psychological factors (discussed below), this Court finds that the ALJ has failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. LoGerfo's opinion.

//

MEMORANDUM OPINION
PAGE - 7

**Dr. Mirza**

On January 14, 2004, Dr. Mirza opined that Plaintiff was limited to sedentary work, and that her inability to perform at least half-time work was permanent. (Tr. 277.) The ALJ's stated reason for rejecting Dr. Mirza's opinion was that the Plaintiff had undergone back surgery only one month earlier. (Tr. 24.) The ALJ also noted that Dr. Mirza had encouraged Plaintiff to walk as much as possible, and that she had subsequently reported walking four to five hours daily. (*Id.*) While Plaintiff had undergone surgery only one month before, Dr. Mirza did not indicate that her limitations were likely to improve at a later date. On the contrary, he stated that Plaintiff's inability to work at least halftime was permanent. (Tr. 277.) As noted above, encouraging locomotion does not plainly contradict an assessment of "severely limited." Nor is it inconsistent with a limitation of sedentary work, the definition of which recognizes that a certain amount of walking may be necessary. (*Id.*)

The notation that Plaintiff was walking four to five hours daily occurred in a report dated February 2004, only two months after she had undergone two back surgeries one week apart. (Tr. 363.) At that time Plaintiff had not yet been released for physical therapy. (Dkt. #17.) The notation is contradicted consistently throughout the remainder of the record. In March 2004, Plaintiff reported walking four to six times *a week* for 30-60 minutes, "stop and go." (Tr. 359.) In June 2004, August 2004, and March 2005, Plaintiff indicated an ability to walk only 1-1½ blocks at a time. (Tr. 338, 335, 453.) The February 2004 report appears to be an anomalous notation which is inconsistent with several later reports that demonstrate Plaintiff's extremely lower level functioning; thus, it does not appear to be reliable. For these reasons, this Court finds that the ALJ has not provided specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Mirza's opinion.

//

**Dr. Press**

On July 15, 2003, Dr. Press conducted a psychiatric evaluation of Plaintiff, diagnosing her with a pain disorder with both medical and psychological factors, opiate dependence, currently prescribed for pain, alcohol dependence in sustained, full remission, major depressive disorder with psychotic features, chronic pain, and a Global Assessment of Functioning (GAF) of 47. (Tr. 226.) Dr. Press opined that Plaintiff could not perform work activities on a consistent basis, maintain regular attendance in the workplace, complete a normal workday or workweek, or deal with the usual stress encountered in competitive work. (Tr. 227.) The ALJ rejected this opinion. (Tr. 24.) Dr. Press further opined that although Plaintiff's problems were partially treatable, her likelihood of recovery was poor and unlikely to improve within the next twelve months. (Tr. 226.) Dr. Press indicated that Plaintiff had severe pain problems and would benefit from receiving psychiatric evaluation and treatment. (*Id.*)

In rejecting Dr. Press' opinion, the ALJ noted that although Plaintiff complained of paranoia and auditory hallucinations at her evaluation, the evidence did not document ongoing psychotic symptoms. (Tr. 24.) The ALJ also noted that Plaintiff had not received treatment from a mental health specialist, and that her psychotropic medications were prescribed by her primary care physician. (*Id.*) It is not clear how the fact that Plaintiff discussed her psychotic symptoms with a psychiatrist rather than with her primary care physicians is evidence against those symptoms. While Plaintiff had not received treatment from a mental health specialist, such treatment had never been offered to her. (Tr. 474.) Dr. Press determined that Plaintiff would benefit from psychiatric treatment, (Tr. 226) and Plaintiff has indicated that she would go to counseling if it were offered. (Tr. 474.) The ALJ does not make it clear how the fact that Plaintiff's antidepressants were prescribed by her primary care physician supports rejection of Dr. Press' opinion. Plaintiff had not yet seen a psychiatrist at the time antidepressants were first

MEMORANDUM OPINION
PAGE - 9

prescribed for her.  (Tr. 186, 222.)  Dr. LoGerfo prescribed them in view of her significant depressive symptomatology.  (Tr. 186.)

This Court finds that the opinions of Plaintiff's three examining and treating physicians are consistent and unanimous in their assessment of Plaintiff's inability to work at least half-time or on a consistent basis.  Further, the ALJ has failed to state specific and legitimate reasons supported by substantial evidence in the record for rejecting these opinions.

B.      Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ did not provide clear and convincing reasons supported by specific facts for rejecting Plaintiff's subjective testimony regarding pain and related symptoms. In rejecting Plaintiff's testimony, the ALJ must perform a two-step analysis.  *Smolen v Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The first step requires the plaintiff to produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged symptoms.  (*Id.*)  In addition, there must be no evidence of malingering.  (*Id.*)  In the present case, Plaintiff met this burden by presenting medical evidence of her pain disorder with both medical and psychological factors.  (Tr. 226.)  Likewise, there is no evidence in the record indicating that Plaintiff was malingering, and the Commissioner so concedes.  (Dkt. #13.)

The second step requires the ALJ to analyze the credibility of a Plaintiff's testimony regarding the severity of her symptoms.  The ALJ can reject a Plaintiff's symptom testimony only if he makes specific findings, stating clear and convincing reasons for doing so.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, her daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which

MEMORANDUM OPINION
PAGE - 10

she complains. *See Smolen*, 80 F.3d at 1284 (citations omitted).

In the present case, Plaintiff testified that she has worked at numerous jobs, including, *inter alia*, cleaning motel rooms, cashiering, meat-trimming, and telemarketing. (Tr. 445-46.) She has had to switch jobs and work fewer hours due to constant pain which made her unable to stand, sit, or walk for very long, and which made bending and lifting difficult. (Tr. 74.) She used to clean her whole house in an hour, but at the time of her initial application, it took her an hour to do dishes, 45 minutes to sweep the floors, and an hour to mop them, as she had to stop and rest about every ten minutes due to pain. (Tr. 97-98.) Later, the only housework she was able to do was wash dishes, which took her awhile due to the need to stop and rest. (Tr. 115.) Others had to help her with the housework and with shopping, and friends had to bathe her son, as her pain prevented her from doing so herself. (Tr. 115, 224, 448.) She is no longer able to do her cultural handicrafts due to pain. (Tr. 449-50.)

The ALJ stated a number of reasons in support of his finding that Plaintiff was not entirely credible. (Tr. 23.) First, the ALJ found Plaintiff's testimony that friends assisted her with housework to be inconsistent with her activity questionnaire report that "she could wash dishes for an hour, sweep the floor for 45 minutes at a time, and mop the floor for an hour." (*Id.*) However, Question 8 on the questionnaire asks not how long Claimant can do chores, but rather how long it takes to do them. (Tr. 97.) Thus, what the ALJ states as an ability to perform for 45-60 minutes continuously, is actually the total time required to perform the task, which Plaintiff indicates that she must do in ten minute increments interspersed by periods of rest. (Tr. 97-98.) Plaintiff also reported in her Activities of Daily Living and Socialization questionnaire and to Dr. Press that friends helped her with housework. (Tr. 115, 224.) Based on a careful reading of the record, I find that the plaintiff's testimony and reports are consistent regarding her ability to do housework.

MEMORANDUM OPINION
PAGE - 11

Second, although the ALJ found that Plaintiff suffers from depression (Tr. 21), he bases his credibility findings, in part, on inconsistencies regarding her depression. (Tr. 23.) The ALJ observed that whereas Plaintiff reported her depression to Dr. Press as 9½ -10 out of 10, she was not referred for counseling. (*Id.*)  However, the examining psychiatrist determined that Plaintiff would benefit from receiving evaluation and treatment from a psychiatrist. (Tr. 226.) Moreover, Plaintiff indicated that she would go to counseling if referred. (Tr. 474.) The ALJ also noted that Plaintiff was off psychotropic medications for several months despite her acknowledgment that her depressive symptoms improved with medication. (Tr. 23.) The ALJ found that this suggested that Plaintiff was not suffering from significant depressive symptoms during "that period." (*Id.*)  It is not clear whether the ALJ is referring to the initial period during which Plaintiff took antidepressants or to the hiatus in which she did not.  Nor does the ALJ make clear how improvement of depressive symptoms followed by a medication hiatus indicates a lack of significant depression or, in turn, a lack of credibility.  The ALJ did not inquire of Plaintiff as to the reason for her temporary cessation of antidepressant medication, therefore this Court finds that the record has not been fully developed on this issue.

Third, the ALJ found that Plaintiff exaggerated her physical complaints based on the fact that she had 5/5 Waddell's signs. (Tr. 23.)  However, this conclusion appears to be based on a misinterpretation of the Waddell's signs.  Plaintiff submitted additional evidence on this subject to the Appeals Council. (Tr. 4.)  In an abstract taken from a posting on the website of the National Center for Biotechnology Information, a division of the National Library of Medicine at the National Institutes of Health, Dr. Waddell writes:

> Despite clear caveats about the interpretation of the signs, they have been
> misinterpreted and misused both clinically and medicolegally.  Behavioral
> responses to examination provide useful clinical information, but need to be
> interpreted with care and understanding . . . .  Multiple signs suggest that the
> patient does not have a straightforward physical problem, but that

MEMORANDUM OPINION
PAGE - 12

psychological factors also need to be considered . . . . Behavioral signs are not on their own a test of credibility or faking.

(Tr. 442.)

Rather than suggesting exaggeration, the 5/5 Waddell's signs tend to lend credence to Plaintiff's complaints within the context of the pain disorder.  Furthermore, both the consulting psychiatrist and examining physician have diagnosed Plaintiff with depression.  (Tr. 226, 278.)  Thus, this Court's careful consideration of the record supports the finding that Plaintiff's 5/5 Waddell's signs was not a convincing basis for the ALJ to reject her pain testimony.

Fourth, regarding Plaintiff's physical abilities, the ALJ noted the following as inconsistencies: (1) Plaintiff complained of maximal pain during a physical therapy visit, but appeared to walk and move about with relative ease, and later reported that her pain was tolerable with medication; (2) Plaintiff claimed at the hearing that she could walk only 1.5 blocks before needing rest, but had reported to Dr. Mirza that she was walking four to five hours daily; (3) Plaintiff traveled to Montana in mid 2004; and (4) the activities associated with parenting a small child are consistent with medium level work.

The record indicates fluctuating difficulty with gait ranging from normal, to waddling, limping, and slightly ataxic (Tr. 182, 335, 361, 155, 176, 334, 187).  The record also indicates fluctuating degrees of pain and of the ability of medications to control it.  (Tr. 74, 81, 82, 96-98, 110, 114, 149, 151, 153, 155, 176, 182, 185, 187)  Plaintiff has reported that her pain is affected by weather (Tr. 96, 187, 408), and that it is intermittent.  (Tr. 155.)  Plaintiff's reports on her pain cover a range of time since before her October 2002 application to her hearing in March 2005.  In her March 2003 reconsideration report, she reported that her pain had gotten worse.  (Tr. 110.)  Accordingly, this Court finds that an occasional report of Plaintiff's pain being tolerable is not

MEMORANDUM OPINION
PAGE - 13

inconsistent with the overall record, nor indicative of a lack of credibility considering the length of time covered, Plaintiff's reports on pain fluctuation, and the psychological factors involved in her pain disorder.

The ALJ does not explain how traveling to Montana bears upon Plaintiff's credibility, and the record lacks support for the conclusion.   The record indicates that Plaintiff receives significant help from others in caring for her son and that her own activity levels in this regard are minimal.  (Tr. 115, 123, 448.)  Plaintiff reported to her health care provider in September 2002 that her pain was worsening, her mobility decreasing, and that taking care of her toddler was "very difficult." (Tr. 151.)  This Court therefore concludes that what parenting Plaintiff is able to do is not inconsistent with her reports of pain and physical inability.

Fifth, the ALJ concluded that Plaintiff's pre-disability work history reflects on her credibility, finding that her low earnings indicated a predilection for unemployment.  Plaintiff's claimed disability began in 1993.  (Tr. 64.)  She had two minor children during this period.  (Tr. 447-448.)  Whether her work history at that time was based on a predilection for unemployment, for homemaking, or for some other reason is not clear from the record.  The Commissioner argues that Plaintiff completed only one-half of her physical therapy.  However, Plaintiff reported that therapy tended to make her symptoms worse and that she felt it was not much help.  (Tr. 342.)  This Court finds that the ALJ has not provided a reason for finding this explanation incredible.

In addition, it is noteworthy that the record lacks any indication on the part of the examining physicians that Plaintiff exaggerates her experience or lacks credibility.  It is also worth noting that Plaintiff was completely forthcoming about her temporary street drug use during the

MEMORANDUM OPINION
PAGE - 14

1    period she was without prescription analgesics.

2         Finally, the nature of Plaintiff's pain disorder is of particular importance to this case.  This

3    is a disorder with both medical and psychological factors.  Because a pain disorder must be ruled

4    out if the patient intentionally produces or feigns her symptoms (DSM-IV-TR 307.89), the

5    consulting psychiatrist must necessarily consider this possibility.  The fact that Dr. Press

6    diagnosed the plaintiff as suffering from a pain disorder tends to support a finding of credibility.

7    Further, this diagnosis presumes that the patient's symptoms cannot be explained entirely by a

8    general medical condition.  (*Id.*)  The condition is primarily a mental disorder.  (*Id.*)  To the extent

9    that the ALJ's credibility findings are derived from the nature of the condition itself, a circularity

10   exists.

11

12        In sum, the Court finds that the ALJ has not provided clear and convincing reasons for

13   rejecting Plaintiff's subjective symptom testimony.  While the ALJ made specific findings in some

14   instances, these findings were based on a misreading of the record.  In particular, the record

15   contradicts the findings regarding Plaintiff's endurance in performing housework and in walking,

16   the significance of the Waddell's signs, and the extent of her parenting activities.  Other findings

17   require greater specificity as to reasoning or further development of the record, including the

18   conclusions based on Plaintiff's temporary cessation of antidepressants, her pre-disability work

19   history, and her trip to Montana.  Most importantly, this Court finds that the ALJ fails to

20   adequately explain his credibility findings in light of Plaintiff's pain disorder with medical and

21   psychological factors.

22

23   C.    ALJ's Finding that Plaintiff's Pain Disorder is Not a Severe Impairment

24        Plaintiff argues that the ALJ's step two finding that her pain disorder is not a severe

25

26   MEMORANDUM OPINION
     PAGE - 15

impairment is in error. A claimant's impairment, or combination of impairments, is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521, 416.921.

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. See *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits. In such a case, there is no reason for the Secretary to consider the claimant's age, education, and work experience." (*Id.*) at 148. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations omitted).

In the present case, the ALJ noted that Dr. Press diagnosed a pain disorder with medical and psychological factors, but that the evidence supported a finding that Plaintiff exaggerated the degree of pain she experiences. Thus, the ALJ's credibility finding underlies his determination that the pain disorder is not severe. Having concluded that the ALJ has failed to state clear and convincing reasons for rejecting Plaintiff's pain testimony, this Court finds that the record does not support a finding that the impairment is not severe.

MEMORANDUM OPINION
PAGE - 16

D.    Vocational Expert Testimony

Plaintiff argues that the ALJ erred in disregarding the vocational expert's testimony.  The ALJ in posing a hypothetical to a vocational expert "'must set out all the limitations and restrictions of the claimant.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).  In the present case, the ALJ posed hypotheticals that excluded certain limitations based on Plaintiff's pain testimony.  At the hearing, Plaintiff suggested alternative hypotheticals that incorporated such limitations.  However, the ALJ rejected the vocational expert's testimony regarding these alternatives.  The Court finds that this testimony should be reevaluated following reconsideration of Plaintiff's subjective testimony, her pain disorder as a severe impairment, and the opinions of her examining physicians.

## VIII.  CONCLUSION

The Commissioner's determination to deny Plaintiff Supplemental Social Security Income is neither supported by substantial evidence in the record nor free of legal error.  Accordingly, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

DATED this 12th day of October, 2006.

MONICA J. BENTON
United States Magistrate Judge

MEMORANDUM OPINION
PAGE - 17